We are opening the summer for the Financial Freedom Association, LLC. On behalf of Appellant Stephen Summers, I'd like to reserve two minutes for rebuttal. It's our position that the lower court erred in granting the summary judgment motion of the appellee, Financial Freedom, on two main issues. One, that the district court erred in ruling that the appellant didn't have standing to bring their claims. And second, that the appellee did not have to file a claim in the Rhode Island probate court and go through the probate process. First, in regards to standing, Rhode Island has a lengthy case history dealing with mortgage cases and whether or not a homeowner has standing to bring claims challenging the foreclosure assignment. Is Rhode Island law what we're concerned with on the standing issue? Standing is jurisdictional in nature, is it not? Yes, Your Honor. Okay. So a federal court has to, even in diversity, has to judge its jurisdiction and jurisdictional issues by federal standards, does it not? Yes, Your Honor. Okay. The issue here with standing is a little bit murky, and the reason is this. The case that is most similar to this case is a case called Chung v. Mortgage Electronic Registration Systems. It's a case that the Rhode Island Supreme Court ruled on in 2014. And in that case, the Rhode Island Supreme Court overturned the lower court's decision on this issue of standing. The lower court had ruled the plaintiff didn't have standing to bring their claims, and the Supreme Court overturned that. The reason that that's important is because in all of these cases, there's a question of whether or not the allegations challenging a mortgage assignment are void or voidable. And I would argue that despite the fact that standing is a procedural and jurisdictional issue, that the substance of whether or not a particular allegation is void or voidable, because it deals with the merits of the case, would be substantive. And a federal court is bound by states' substantive law. But Judge McConnell went out of his way, didn't he, to distinguish Chung, and pointed out that the Rhode Island court, in reversing the grant of a motion to dismiss in that case, was operating on a different standard than he was bound to operate as a federal judge, a much more permissive standard than the federal standard, which requires a showing of plausibility. Yes, Your Honor. The case that you're referring to that Judge McConnell relied upon is Wilson v. HSBC. That case was a Massachusetts state court case. And in that case, the issue was one that I believe the Rhode Island court would find voidable. It questioned whether the agent who signed the assignment acted outside of the scope of his authority. And in Rhode Island, Rhode Island would agree that that is a voidable condition. However, in the case at Barr, the allegations go to the very authority of whether or not the signatory on the assignment had authority on behalf of the noteholder to sign at all. And in the state of Rhode Island, the Supreme Court has ruled that that allegation is sufficient to survive a motion to dismiss. And therefore, by Rhode Island not overturning prior case law suggesting that a voidable condition will not give standing, it suggests that an allegation that a signatory did not have authority from the noteholder to sign would lead to a void condition. That's not a procedural aspect of the case, Your Honor. That's considered a substantive ruling. So you're absolutely correct that the standards set forth in Wilson versus- No, no, but that's not what Judge McConnell said. Judge McConnell said that the Rhode Island Supreme Court, all right, was applying a standard which was similar to the standard that used to prevail in the federal courts, the Conley and Gibson standard, that a plaintiff could stay in court if on any conceivable reading of the complaint, the plaintiff might have a claim, that was enough. That the federal standard is now stricter than that. The federal standard requires at a minimum that the claim be plausible. That requirement is a procedural requirement. Federal court procedure governs motion to dismiss. And Judge McConnell said that under a plausibility standard, much tougher than in any conceivable claim standard. All right? Cases like Wilson and our decision in Culhane controlled here. The issue was whether this allegation created a void or voidable condition. He found that this alleged defect, even if true, was merely rendered the assignments voidable. That's the obstacle course that you've got to run. Yes, Your Honor, I agree with that. And in Chun v. Merz, the Rhode Island Supreme Court did broaden the Culhane holding by granting a broader spectrum of what would fall understanding. And it is true that this issue of void or voidable is really the crux of the issue. However, if the Rhode Island Supreme Court has ruled that a particular allegation within their state would be a void condition as opposed to a voidable condition. No, but the Rhode Island Supreme Court didn't rule that in Chun. All that the Rhode Island Supreme Court said was that it was conceivable that the plaintiff might be able to prove a void condition. That's different than a holding on the merits. I mean, you seem to overlook that the case you're relying on was decided on a motion to dismiss and had no effect other than to let that case go forward. All right, and that's what Judge McConnell in his decision attempted to point out to you, that that wasn't the standard that controlled his decision. If we had a Rhode Island Supreme Court decision in a diversity case dead in point that said that the allegations here, all right, backed up by appropriate proof amount to a void condition rather than a voidable condition, then you're home free. But we don't have that. We have a Rhode Island Supreme Court decision that on a very liberal standard said there might be enough here to let this case go forward. I agree with your logic, Your Honor. However, in this case, given that there is so much case law that the Supreme Court of Rhode Island has decided where they have agreed with lower court decisions on motions to dismiss or summary judgments based on the fact that they have found these allegations are voidable, these allegations are voidable, that in this case, if the Rhode Island Supreme Court held that opinion that these particular allegations were voidable, the easiest thing for them to do would have been for them to render a decision saying, in accordance with our prior decisions, we find these conditions voidable, and therefore, the plaintiff doesn't have standing. Life would be very sweet if appellate courts always did the easiest thing, all right? But that's not the real world, all right? I mean, the way I read that case very carefully, because I'm not unsympathetic to your argument, what the Rhode Island Supreme Court said in that case is there's enough here to give the plaintiff a chance to prove his case, all right? That's different than a holding directly in point, and then you've got this whole battery of cases that find conditions like this to be voidable. That's what you're up against, particularly since, am I correct that this case was resolved at the summary judgment stage? In federal court. In federal court, yes. Okay. The issue with the void and voidable condition, the allegations in Summers are very similar to the allegations in Chun. And so we're saying that based upon that, our position is that the conditions would, if they were brought in Rhode Island, would lead to a void condition, and therefore, the motion for summary judgment would not have been granted. Okay. Mr. Chief Judge, and may it please the Court, Harris Weiner for the Appellee Financial Freedom Acquisition, LLC. The Court is correct in pointing out that this was a summary judgment decision by Judge McConnell. The appellee made a record. The assignments are in the record. The note and the allonge to the note are in the record, and there is no genuine issue of material fact. As a matter of fact, the plaintiff conducted no discovery in this case and offered only a thin affidavit by the plaintiff himself, adverting to the probate proceeding and making some observations about the note and the assignments. Those failed to dispute any of the facts that were proffered by the appellee to the court. The probate court is not equipped to deal with adjudication of mortgages. The probate court has no authority to enjoin a foreclosure. That's not contemplated by any of the state law. The equities here also cut against the probate court taking any action on this mortgage. It would be a windfall to the appellant to receive a free house under these conditions. He wasn't even the mortgagor or the borrower. He had no privity to the lender or to any of the subsequent financial institutions involved in this case. He simply inherited under an intestate administration and lacked the authority to bring this action. This action perhaps belonged to his mother's estate who took out the reverse mortgage. Well, I don't understand why you say he lacked the authority to bring this action. He or he and his sister did inherit this property. All right? And it seems to me that if there is a remedy against a wrongful foreclosure in this situation, that they really stand in the shoes of their mother. The probate court has awarded the property to them in consequence of her death. So I think it baffles me why you're arguing that he lacks standing when you have so many much better arguments. Well, clearly the second argument regarding standing that was discussed with my sister is a much stronger argument that ‑‑ But I've got one problem with Judge McConnell's decision that you can perhaps help me with. It appears to me that Judge McConnell dismissed the whole case for lack of standing. All right? He dismissed it on two grounds. One, that the probate court didn't have the power or the jurisdiction to address the mortgage. And secondly, that there was a lack of standing because at best he was avoidable. Yeah. There may be a lack of standing to attack the mortgage assignments. I don't think there's a lack of standing to attack the foreclosure itself. After all, you're trying to foreclose on property that I now own. I may not have a valid defense against that foreclosure, but I must have the right to challenge it. I now own the property, so that's not a standing situation. Now, your merits case, which is that the right to foreclose isn't predominated by the mortgagee's failure to file a timely claim in the probate court, that's different. The property owner may lose on the merits, but he surely has standing to contest the foreclosure itself. What's wrong with that? I still think in order for him to obtain standing to satisfy the court's standard from Culhane and from Wilson. Culhane and Wilson dealt with standing to attack assignments to mortgages. All right? But I'm looking at the appellant's backup argument, which is even if he has no standing to attack the assignments to the mortgages, he owns the property. He's still got a right to attack, to defend against your right to foreclose. But as I understand it. What if he has a defense that the mortgage is paid? Can't he come in with that defense? He has no standing? Yes. Yeah, he could come in, he could show here's a paid note. Well, instead of coming in with a paid note, he's coming in with a defense on the merits that says even if these turkeys have the power to foreclose, all right, they've waived that because they should have gone to the probate court and they didn't do it. And that's a waiver. That's like I paid the note because the note has now been canceled. The debt has been canceled. That's his argument. He's got standing to make that argument. May not be a prevailing argument. You've got to convince us of that, but he's got standing to make it. Do you disagree with that proposition? I do respectfully disagree because he is attacking the assignments and he is attacking the ownership of the note. And those are his primary defenses. No, he's got a defense. One of his defenses, whatever else he said, he's made a very clear case for the proposition that when a mortgagor dies and her estate is probated and the mortgagee fails to file a timely claim in the probate proceedings, the mortgagee has waived its rights, period, end of story. He's made that defense. And why doesn't he have standing to pursue it? Your Honor, assuming he has standing, arguendo, the bank still has, or the financial institution still has in rem rights against the property through the mortgage. It's a title theory state. The mortgagee has legal title until it's defeased by payment by the mortgagor. There have been opportunities to redeem this property. They have not been exercised. The probate court does not have jurisdiction over the debt. The debt survives. What was extinguished was a personal claim against the mother, against her estate. And by the terms of the mortgage, this was a non-recourse mortgage, we could not pursue that in probate court. There was no claim that was available to my client in probate court. Well, why did you file one? I understand you filed one. The problem is it wasn't timely. No, there's nothing in the record that we filed a claim in probate court. Okay, so there was no claim filed at all? Correct. Okay. The impersonum claim didn't exist here. So the in rem claim, and I've analogized it to bankruptcy where a personal debt can be discharged, but an underlying in rem claim survives, applies here and applies to the probate court. Otherwise, you're going to have unjust enrichment. The mortgagor received cash. Her prior mortgage was paid off. She had no more personal liability, and she had no further mortgage payments. And by extension, her estate. Counsel, unjust enrichment comes about if they were able to succeed on the merits. And what we're questioning is the issue of standing. I mean, the way I understand these reverse mortgages is that there's still a split in the title between legal and equitable. Is that correct? And that whatever the decedent owned at the time of her death was properly put in probate. Well, to the extent that she wanted to redeem the property or her heirs wanted to redeem the property, that was their equitable right to do so. They elected not to. To the extent that there's a surplus from the sale of the property, that would go to the heirs. So to that extent, they have rights. But the only point is that they have to have some kind of standing to make a claim. I know the case law. Whether it's a meritorious claim or not. I mean, the question is can they get their foot in the door? My position is under Culhane and Wilson, no. But even if they did, there is no authority for the probate court to adjudicate the claim the way they suggest. They had rights that weren't exercised. Moreover. Was this debt evidenced by a promissory note? Yes, there was a note. That note has been endorsed, was endorsed to my client, and my client endorsed it to its parent corporation. But you're saying because that note bore no personal liability, it couldn't have been filed as a claim in the probate court? Yes, Your Honor. Thank you. All right. As my brother has stated, there is no case law directly on point to this particular issue in the state of Rhode Island. And I did review probate case statutes. And the only exception I could find for where you do not need to file a claim is in regards to child support obligations. It's our position that the appellant does have standing to bring these claims and challenge this, based on the fact that they're currently the deed holder on this property. It's recorded. They're on the deed. The purpose of the probate court is to take the property of the decedent, to determine whether or not claims are valid, to determine who the beneficiaries are, and then to distribute the property. The case law that is referenced in my brother's brief, the majority of it comes from states such as California, Ohio, Illinois. Those are lien theory states, so they're different than title theory states. And in addition, there's a group of cases in Illinois that have since then been overturned by the Illinois Supreme Court, stating that in these particular cases with probate, that there are not in rem rights, but quasi-in rem. And therefore, there's a different procedure that needs to be taken with these types of cases. And one of their statements is either that there needs to be a personal representative on behalf of the decedent in order to raise these claims and do a foreclosure, or that the claim has to go through the probate court, for purposes of allowing somebody with interest to challenge whether or not the foreclosure is valid. Your Honor made a great point about the fact that hypothetically, if the note was paid off, and the bank was able to circumvent the probate court, it's very possible that a beneficiary would be divested of property that's rightfully there, or that creditors that have properly filed claims with the probate court may not receive monies that are entitled to them. Well, the difficulty with that is this was a non-recourse note, so there was no personal liability to be discharged by the probate court. The only way this note could be paid off was by the proceeds from the sale of the property, whether on foreclosure or at a private sale, and the probate court has no jurisdiction over that property sale. Yes, Your Honor. However, it's our position that regardless as to whether or not it's a non-recourse note, it still needs to go through the proper probate procedure. Thank you. Thank you both.